## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF WEST VIRGINIA

FILED

DEC 6 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Criminal No.** |
| | **1:22-CR -₿\** |
| **v.** | **Violations:** |
| | |
| **JAMES A. NOLTE,**  **Defendant.** | **18 U.S.C. §1343** |
| | **18 U.S.C. §1957** |

## INDICTMENT

The Grand Jury charges that:

### INTRODUCTION

At all times relevant to this Indictment:

### The COVID-19 Pandemic and the CARES Act

1.       The Coronavirus Aid, Relief , and Economic Security ("CARES") Act was a federal law enacted on or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

2.       Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3.       The Small Business Association ("SBA") is an executive branch agency of the United States government that provides support to entrepreneurs and small businesses.  The SBA is headquartered in Washington, D.C. and maintains its computer servers outside of the State of West Virginia.  The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities

1

after disasters.

4.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans have government-backed guarantees.

<u>The Paycheck Protection Program</u>

5.     One of the loans created was the Paycheck Protection Program ("PPP") loan.  This program provided loans to small businesses for job retention and certain other expenses.

6.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application signed by an authorized representative of the business.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  One requirement is that the business had to be in operation as of February 15, 2020.  In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its average monthly payroll expenses and number of employees.  These figures were then used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, a business applying for a PPP loan had to provide documentation showing its payroll expenses.

7.     A PPP loan application must be processed by a participating lender, such as a financial institution.  If a PPP loan is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by the SBA.  Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

8.     The PPP loan proceeds must be used by the business on certain permissible expenses – payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal of the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a certain percentage of the PPP loan proceeds on payroll expenses.

9.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Oregon.  Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

## COUNTS ONE THROUGH FIVE

(Wire Fraud)

10.      Paragraphs 1 through 9 are hereby realleged as if fully set forth herein.

11.      Beginning in or about May 2020 and continuing until in or about May 2021 defendant **JAMES A. NOLTE** knowingly devised, intended to devise, and participated in a scheme to defraud the United States by submitting fraudulent PPP applications containing false representations.

12.      It was part of the scheme that **JAMES A NOLTE** submitted PPP applications in the name of a business he owned, or the names of a business others owned.  All of the applications submitted by **JAMES A. NOLTE** included false representations designed to fraudulently obtain proceeds ultimately from the SBA.

13.      It was a further part of the scheme that **JAMES A. NOLTE** would misrepresent and conceal material facts regarding the businesses for which he submitted PPP loan applications, including the number of employees at the business and the monthly payroll.

14.      It was part of the scheme that **JAMES A. NOLTE** submitted a PPP loan application for PGO Veteran Services and was awarded $100,922.00.  In particular, **JAMES A. NOLTE** falsely reported a monthly payroll of $40,369.00 for four employees.  In support of the loan application, **JAMES A. NOLTE** submitted fraudulent wage reports and tax documents.

15.      It was part of the scheme that **JAMES A. NOLTE** submitted a loan application for PG Health and was awarded $149,900.00.  In support of the loan, **JAMES A. NOLTE** submitted fraudulent tax documents and wage reports.

3

16.     It was part of the scheme that **JAMES A. NOLTE** submitted a loan application for RJS Catering and was awarded a loan of $100,295.00.   In support of the loan application, **JAMES A. NOLTE** submitted fraudulent tax documents, wage reports and business records.

17.     It was part of the scheme that **JAMES A. NOLTE** submitted a loan application for Dental Care Plus and was awarded a loan in the amount of $144,900.00.   In support of the loan, **JAMES A. NOLTE** submitted fraudulent tax documents, payroll reports and other business documents.

18.     It was part of the scheme that **JAMES A. NOLTE** submitted a second draw loan application for PG Health and was awarded a loan in the amount of $149,700.00.   In support of the loan application, **JAMES A. NOLTE** submitted fraudulent tax documents, wage reports and business records.

19.     As a result of **JAMES A. NOLTE**'s scheme, the United States was defrauded out of a total of $645,717.00.   **JAMES A. NOLTE** used the proceeds of his fraud to his own personal benefit, paying for his own personal expenses.

20.     On or about the dates specified as to each count below, in Bridgeport, Harrison County, in the Northern District of West Virginia, **JAMES A. NOLTE** did knowingly transmit or cause to be transmitted by means of a wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description |
|---|---|---|
| 1 | May 26, 2020 | An internet transmission originating from West Virginia to the SBA server in Virginia constituting a false and fraudulent application for a PPP loan in the name of "PGO Veteran Services." |
| 2 | July 27, 2020 | An internet transmission originating from West Virginia to the SBA server in Virginia constituting a false and fraudulent application for a PPP loan in the name of "PG Health" |
| 3 | August 13, 2020 | An internet transmission originating from West Virginia to the SBA server in Virginia constituting a false and fraudulent application for a PPP loan in the name of "RJS Catering" |

4

| 4 | August 13, 2020 | An internet transmission originating from West Virginia to the SBA server in Virginia constituting a false and fraudulent application for a PPP loan in the name of "Dental Care Plus" |
| 5 | May 12, 2021 | An internet transmission originating from West Virginia to the SBA server in Virginia |

In violation of Title 18, United States Code, Section 1343.

## COUNT SIX THROUGH SIXTEEN

(Unlawful Monetary Transactions)

1.      Paragraphs 1 through 20 of Count One are re-alleged and incorporated as though fully set forth herein.

2.      On or about the dates set forth in the chart below, each date constituting a separate count of this Indictment, in Harrison County, in the Northern District of West Virginia, and elsewhere, defendant **JAMES A. NOLTE**, did knowingly engage in a monetary transaction through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the defendant **JAMES A. NOLTE**, made the following monetary transactions in or affecting interstate commerce by or through a financial institution with funds having been derived from a specified unlawful activity, specifically wire fraud in violation of Title 18, United States Code, 1343, all in violation of Title 18, United States Code, Section 1957.

| Count | Date | Financial Transaction |
|---|---|---|
| 6 | August 31, 2020 | An online payment from a J.P. Morgan Chase account ending in 3269 in the amount of $40,567.38. |
| 7 | September 2, 2020 | Withdrawal of $135,901.44 via a cashier's check number 2014091351 to Scott Law Client Trust Account from a Huntington Bank account ending in 3535. |
| 8 | September 18, 2020 | An online transfer from a J.P. Morgan Chase account ending in 7189 in the amount of $13,000.00 to a J.P. Morgan Chase account ending in 3269. |
| 9 | September 18, 2020 | An online payment from a J.P. Morgan Chase account ending in 3269 to BJ Contracting in the amount of $11,975.00. |
| 10 | September 23, 2020 | An online payment from a J.P. Morgan Chase account ending in 3269 in the amount of $14,289.19 to a Citi Bank credit card. |
| 11 | September 28, 2020 | An online payment from a J.P. Morgan Chase account ending in 3269 in the amount of $10,794.20 to a Citi Bank credit card. |
| 12 | January 4, 2021 | An online transfer from a J.P. Morgan Chase |

6

| | | |
|---|---|---|
| | | account ending in 7189 in the amount of $40,000.00 to a J.P. Morgan Chase account ending in 3269. |
| 13 | April 14, 2021 | An online transfer from CIT Bank account ending in 8635 in the amount of $100,000.00 to a CIT Bank account ending in 0407. |
| 14 | May 3, 2021 | An online payment from CIT Bank account ending in 0407 in the amount of $23,637.41 to a Citi Bank credit card. |
| 15 | June 21, 2021 | Withdrawal of $137,801.22 via a cashier's check number 2014773411 to James A. Nolte from a Huntington Bank account ending in 3535. |
| 16 | October 1, 2021 | An online transfer from J.P. Morgan Chase account ending in 7189 in the amount of $15,000.00 to a J.P. Morgan Chase account ending in 3269. |

In violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

Wire Fraud

1.      Pursuant to Title 28, United States Code, Sections 2461(c), Title 18 United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case, that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, or a conspiracy to violate such offense, including a money judgment in the amount of at least $645,717.00.

2.      Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

A true bill,

/s/_____
Foreperson

/s/_____
WILLIAM IHLENFELD
United States Attorney

Jennifer T. Conklin
Assistant U.S. Attorney

8